UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.               )<br>BRIAN PRELLER              )<br>)<br>Defendant.          )<br>_____ ) | No.   23-CR-45(TNM) |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING AND MOTION FOR DOWNWARD VARIANCE

Brian Preller, by and through counsel, Mary M. Nerino, and the Office of the Federal Public Defender for the District of Vermont, hereby files the following sentencing memorandum in support of his sentencing on the charge of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). This sentencing is scheduled to take place before this Court on September 13, 2023. Mr. Preller respectfully moves this Court to vary downward from his United States Sentencing Guidelines in this case and sentence him to a period of five years of probation, a $100 special assessment, and $2,000 in restitution. In support thereof, Mr. Preller submits the following memorandum.

### I.      Introduction

The presentence report correctly notes the agreed-upon United States Sentencing Guidelines calculation as eight to 14 months in prison, based upon a total offense level of 11 and a criminal history category of I. PSR ¶ 89.  The United States has requested a sentence of eight months of incarceration, with three years of supervised release to follow. A sentence of five years of probation would place Mr. Preller under the watchful eye of the federal government for a longer period than suggested by the government and would allow this Court to resentence him

1

should he fail to comply with his conditions of probation. Mr. Preller believes this, along with restitution in the amount of $2,000, would be a sentence sufficient, but no greater than necessary, in order to comply with the purposes of 18 U.S.C. §3553(a) in this case.  Mr. Preller believes that this sentence will demonstrate to the public that his offense was very serious, will serve as deterrence to others and to himself, and will satisfy the other factors under these subsections. 18 U.S.C. §3553(a)(2)(A)-(D). Mr. Preller's history and characteristics, his demonstrated remorse and contrition, the nature and extent of his involvement in the events of January 6, 2021, and his continued compliance with and behavior while on pretrial supervision all support a downward variance to a 5-year term of probation in this case.

## II.    Nature of the Offense and the Guideline Calculation

The stipulated facts are correctly stated in the PSR. PSR ¶¶ 11-21. Mr. Preller's guidelines calculations are also correctly stated in the PSR. *Id.* ¶¶ 19-29. Mr. Preller's base offense level of 10 is determined by USSG § 2A2.4 of the Guidelines. *Id.* ¶ 25. Mr. Preller receives an enhancement of three levels pursuant to USSG § 2A2.4(b)(1)(A) because he was part of a group of individuals that pushed into a line of law enforcement officers attempting to restrain the crowd, and thus his offense involved physical contact. *Id.* ¶ 26. Mr. Preller receives a two-level reduction for acceptance of responsibility pursuant to USSG §§3E1.1(a). *Id.* ¶¶ 27,28. With no prior arrests or convictions, Mr. Preller has a total criminal history score of zero, resulting in a criminal history category I. *Id.* ¶ 36. With a total offense level of 11 and a criminal history category of VI, his guidelines range is eight to 14 months. PSR ¶ 89.

## III.    The Sentencing Guidelines and § 3553(a) Factors

The overriding sentencing principle, set forth in 18 U.S.C. § 3553(a), is to "impose a sentence that is sufficient, but not greater than necessary" to comply with the purposes of sentencing, which are

retribution, deterrence, public protection, and rehabilitation. This objective may be met in the instant case by sentencing Mr. Preller to a sentence *below* the Guidelines and placing him on a lengthy term of probation. While courts must continue to consider the sentencing guidelines, Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a).[1]

### a. Mr. Preller's Personal History and Characteristics

Mr. Preller is a 34-year old military veteran and father who very much regrets his actions leading up to, and on, January 6, 2021.[2] The PSR provides a thorough overview of Mr. Preller's life. *See* ¶¶ 40-79. For Mr. Preller, growing up in a poor household with two alcoholic parents was an exercise in self-preservation and survival. He learned quickly to fend for himself, and it seemed no large jump for him to move out when he found himself propelled into fatherhood at a mere 15 years of age. By 16, he and the mother of his child were married and living in a state of constant transience and poverty. By 17, he had signed up for the U.S. Army and entered into the program informally known as "split operation," where he completed basic training his junior year of high school and then finished the remainder of his training after graduation. During his years of service, he served as an infantryman and spent time deployed in both Iraq and Kuwait. PSR ¶ 70. He served until an honorable discharge in 2013. *Id.* After that, Mr. Preller's living was supported by a combination of disability benefits stemming from his time in the service and pursuing employment in the area he knew best- firearms sales and training. *See, generally* PSR

---

[1] Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).
[2] As Mr. Preller bluntly stated to the PSR writer, "I accept all responsibility for my actions and I regret every moment of the life I lived at that time. Being involved in all of that was a terrible misjudgment." PSR ¶ 24.

¶¶ 75-79. It was this line of work that ultimately led him to meet members of the group Guardians of Freedom (GoF) and become involved in the organization.

Throughout his life, including the period of time encompassing the instant offense, Mr. Preller struggled with alcohol and illicit substance use, which reached its peak in the period between 2020 and July 2021, when Mr. Preller was going through the worst of his marital issues. *See* PSR ¶¶ 50; 63-64. At one point during his divorce, Mr. Preller's drinking increased to the point where he'd consume alcohol pretty much all day, every day, up until he "passed" out each night. PSR ¶ 63. At the point of his January 6, 2021 offense, Mr. Preller was well and truly in the height of his alcohol addiction as he sought release from the emotional and physical abuse he experienced in his marriage. In addition to this, Mr. Preller also struggled with the lingering effects of his time in the military. Around the time of the instant offense, his mental health was out of control. He sought treatment from Veteran's Affairs in Florida, to limited success, and has been diagnosed with Post-Traumatic Stress Disorder stemming from some of his military deployments. PSR ¶¶ 57-60.  After the January 6, 2021 events, he contemplated suicide. *Id.* at 57.

Mr. Preller has changed significantly from the person he was at the time he joined in the Capitol Riots and attempted to push through that tunnel. He no longer uses drugs and alcohol to numb his problems, or to self-medicate his mental health issues. The letters submitted on his behalf in Defense Exhibits A, B, and C describe some of the positive changes his girlfriend, father, and stepmother have seen in him over the past two years. *See* Exhibit A, Letter of Support by Michael Kern Preller; Exhibit B, Letter of Support by Lisa J. Preller; and Exhibit C, Letter of Support by Erika Tefft. As his stepmother notes, "Brian has completely turned his life around."

Exh. B at 2. Mr. Preller's focus now is on his relationships with his family, finding a new and fulfilling career, and maintaining his sobriety.

###    b.  Nature and Circumstances of the Offense

Mr. Preller agrees with the government that his offense, and all of the events surrounding January 6, 2021, are serious. This is why Mr. Preller quickly admitted his wrongdoing and pled guilty to a felony offense, despite his previously immaculate criminal record. Mr. Preller would, however, ask the Court to consider in its deliberation what he did *not* do on that day. Despite his familiarity with firearms, he did not bring or condone anyone bringing those to the area or to the rally. Mr. Preller did not use either of the items identified by the government in its memorandum, (the walking stick or the can visible in the government's pictures), or any other object to inflict harm against anyone. Mr. Preller agrees that he is collectively responsible for the overall damage to the Capitol Grounds and personally responsible for his part in damage created by his group attempt to breach the tunnel in a collective "heave-ho." He understands that what occurred on January 6, 2021 was dangerous, and he continues to regret his choice to be part of it.

###    c.  The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

Mr. Preller's behavior over the past year and his actions during the pendency of this case can give the Court the assurance it needs that Mr. Preller will never engage in similar conduct again. Mr. Preller has been totally compliant with his pre-trial supervision. Mr. Preller went from a law-abiding citizen with a clean record, working in the firearms training field, to a convicted felon who, at 34, will never again possess a firearm because of his actions surrounding this

5

incident. Above all, he is ashamed of his actions. As other judges in this district have recognized, there are many other ways an individual can be punished besides jail time:

> People are all very quick to suggest that the only real punishment is a jail sentence, and it's just not true. People can suffer in many different ways and do suffer in many different ways a result of their conduct and that is something every judge, at least on this court, I believe, understands, and takes into account when they're fashioning the appropriate sentence.

*United States v. Andrew Cavanaugh*, 21-cr-362 (APM), Sentencing Transcript at 29. Although Mr. Preller feels as though his conviction (and the corresponding collateral consequences described above) serve as adequate specific deterrence in his case, sentencing Mr. Preller to a five-year probationary period will also serve to reinforce his good behavior and adequately protect the community against future crimes by Mr. Preller. Mr. Preller understands that a five-year period of probation will serve as five years during which he will be subject to a potential re-sentencing should he violate in this case. He does not take that lightly, but his good behavior for his entire life, excepting this incident, and his compliance with pretrial conditions of release both demonstrate Mr. Preller's capacity for continued success.

The government, in its sentencing memorandum, urges this Court to consider Mr. Preller's sentencing as similar to the facts and outcomes in *United States v. Ryals*, 21-CR-244 (CKK) and in *United States v. Rockholt*, 23-CR-104 (TNM). Mr. Preller respectfully suggests that his case deserves *more* of a downward variance than either of the suggested cases. In *Ryals*, the government asked for 6 months of imprisonment despite the defendant's entrance into an office in the Capitol building, and specific assistance in breaking down the locked office door to gain entry. *See Ryals,* 21-CR-244, Dkt 73, pp 1-2. The Court, however, noted that Mr. Ryals did not accept responsibility, and decided to "take away" the two-point Guideline reduction for acceptance of responsibility. *Ryals*, Sentencing Transcript, Dkt. No. 98 at p. 29, 31. In Mr.

6

Rockholt's case in front of this Court, the government likewise noted that Mr. Rockholt "has shown little, if any, remorse for his conduct." *Rockholt*, Government's Sentencing Memorandum, Dkt. No. 73 at 18. Mr. Rockholt also "did not leave without a souvenir," which he never returned. *Id.* at 16.  Mr. Preller, on the other hand, has done his best to demonstrate remorse for his actions and has repeatedly acknowledged his wrongdoing to federal agents, federal prosecutors, and now to this Court. Mr. Preller submits that a downward variance in his case is *not* inconsistent with this Court's other sentencings for similarly-situated defendants, and that the increased term of supervision that five years of probation would provide is sufficient, but not greater than necessary, for his particular circumstances.

In addition, sentencing Mr. Preller to a period of incarceration is not the way to ensure that the isolated events on January 6 will never occur again. As other Courts have noted, an event like January 6 is unlikely to even happen again.[3] Even if it did, it is unlikely the public would be more deterred by Mr. Preller serving a period of incarceration than it would be if Mr. Preller completes a lengthy period of probation. The fact that Mr. Preller was prosecuted, convicted of a felony offense, and is subject to all of the collateral consequences that such conviction entails would likely serve an equal public deterrent.  As many attorneys have pointed out during January 6th litigation, a certainty of prosecution, rather than the severity of the punishment, often serves as a greater deterrent.[4] Mr. Preller submits that a sentencing of five years of probation, during which he will be supervised and subject to conditions of supervision, is sufficient, but not greater than necessary, to provide general deterrence to the public to commit this type of offense.

---

[3] *See* Transcript of Sentencing in *United States v. Douglas Sweet*, 21CR41-3. In it, the Honorable Judge Nichols states, "It is unlikely that the circumstances of led to their actions on January 6 will occur again. It is unlikely that the sitting President will invite them, as part of a large crowd, to protest and demonstrate, even fight at the Capitol…"

[4] *See*, for example, National Institute of Justice, *Five Things About Deterrence* (June 5, 2016), full article available at https://nij.ojp.gov/topics/articles/five-things-about-deterrence (last accessed September 8, 2023).

## CONCLUSION

For the reasons stated above, Mr. Preller respectfully requests that the Court grant his request for a downward variance, impose a sentence of five years probation, a $100 special assessment, and $2,000 in restitution. Mr. Preller additionally request that the Court not impose an additional fine in this case pursuant to USSG §5E1.2(a). As noted in the paragraph 87 of the PSR, Mr. Preller is unable to pay a monetary obligation in addition to restitution in this case.

Respectfully submitted,

Dated: September 8, 2023
Burlington, VT

By: */s/ Mary M. Nerino*
Mary M. Nerino
Assistant Federal Public Defender
District of Vermont
VA Bar #86431
95 Pine Street, Ste 150
Burlington, Vermont  05401
(802) 862-6990
Counsel for Brian Preller

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
|                                                              ) | |
|            v.                                             ) | No.    23-CR-45(TNM) |
| BRIAN PRELLER                              ) | |
|                                                              ) | |
|            Defendant.                          ) | |
| _____) | |

CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September, 2023, I electronically filed the Defendant's Sentencing Memorandum and Motion for Downward Variance with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to Counsel of Record for the United States, including:  Assistant United States Attorney, Jennifer Blackwell, via Jennifer.blackwell3@usdoj.gov.

By:     */s/ Mary Nerino*
          Counsel for Brian Preller
          Assistant Federal Public Defender
          District of Vermont
          VA Bar #86431
          95 Pine Street, Ste 150
          Burlington, Vermont  05401
          (802) 862-6990